UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHELLE GRANT,

      Plaintiff,

 -against-

ABBOTT HOUSE, WESTCHESTER COUNTY,
and RICHARD GRIFFIN,

      Defendants.

14-cv-8703 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

 Plaintiff Michelle Grant ("Plaintiff") asserts claims against Defendants Abbott House, Westchester County, and Richard Griffin (collectively, "Defendants") arising out of the termination of her employment on July 12, 2013. Plaintiff alleges that: (1) Defendants conspired to terminate and retaliated against Plaintiff for exercising her First Amendment rights, in violation of 42 U.S.C. §§ 1983 and 1985; (2) Defendants retaliated against Plaintiff for engaging in protected conduct under the False Claims Act, 31 U.S.C. § 3729 *et seq.* and the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; (3) Westchester Country tortiously interfered with Plaintiff's contractual relations with Abbott House; and (4) Defendants retaliated against Plaintiff because she complained about a protected activity, in violation of New York State Executive Law § 290 *et seq.* and New York Labor Law § 215.

 Before the Court are two motions to dismiss, the first filed jointly by Defendants Abbott House and Griffin, and the second filed individually by Defendant Westchester County. Also before the Court is Plaintiff's cross-motion to amend the Amended Complaint. For the following reasons, Defendants' motions are GRANTED and Plaintiff's cross-motion is DENIED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2016

## BACKGROUND

The following facts are taken from the Amended Complaint ("AC") unless otherwise noted, and are accepted as true for the purposes of this motion.

Abbott House is a domestic not-for-profit corporation located in Bronx, New York, which operates a group home that houses troubled children. (AC ¶¶ 7, 14-15.) During the time period at issue in the Amended Complaint, Westchester County contracted with Abbott House to place troubled children in its group home. (*Id.* ¶ 14.) Plaintiff was employed as a social worker at Abbott House from January 31, 2011 to July 12, 2013, and was responsible for supervising the children placed with Abbott House by Westchester County. (*Id.* ¶¶ 5, 11-12, 15.) Plaintiff was supervised by Richard Griffin, an employee of Abbott House. (*Id.* ¶¶ 10, 13.)

At some point during Plaintiff's tenure at Abbott House, there was a period of one month when there was only one child placed in the group home. (*Id.* ¶ 18.) The child was purportedly permitted by Abbott House supervisors and Westchester County to spend weekends at his mother's home and would return to the group home at the start of the week. (*Id.* ¶¶ 19-20.) "Around the holidays in July 2013," the child spent longer than the weekend at his mother's home. (*Id.* ¶ 21.) After Plaintiff requested that the child return to the group home, (*id.* ¶ 22), an issue arose as to whether the child had been granted permission to stay at his mother's home or whether he was absent without leave ("AWOL"). (*Id.* ¶¶ 23 – 31.) Although Plaintiff believed that the child had been granted permission to stay with his mother, Griffin asked Plaintiff to falsely report that the child was AWOL. (*Id.* ¶ 31.) Plaintiff was also directed by Griffin to lie at an upcoming permanency hearing in court – to state that the child was AWOL, rather than permitted to leave – "in order to remain in good graces with Westchester County and to continue their contract with Westchester County." (*Id.* ¶ 32.) Another employee of Abbott House,

2

"Annette," also told Plaintiff to lie because it was what "Westchester County . . . wanted." (*Id.* ¶ 35.)

On July 11, 2013, Plaintiff testified at the permanency hearing for the child, stating that the child was not AWOL. (*Id.* ¶ 36.) The following day, Griffin fired Plaintiff because she refused to testify that the child was AWOL, which would have been a "lie" and a "false statement[]." (*Id.* ¶ 39.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*.

## DISCUSSION

### I.   "Transcripts" Attached to the Amended Complaint

Plaintiff attaches to the Amended Complaint purported "transcripts" of her conversations with Defendants. (Pl.'s Opp. at 3.) Plaintiff asserts that the Court should consider these transcripts in deciding the instant motions because the "transcripts were relied on in drafting the complaints, [and] they are clearly germane to this motion." (Pl.'s Opp. at 3 n.1.) The Court must therefore determine whether it may consider the transcripts in deciding the instant motions.

3

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). Courts also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "However, 'even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "The 'no dispute' requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014) (collecting cases); *see also Cram v. Pepsico Executive Income Deferral Comp. Program*, No. 08-CV-10627 (CS), 2010 WL 4877275, at *4 (S.D.N.Y. Aug. 9, 2010) (refusing to consider a document attached to the complaint, even though the complaint alleged that the document was authentic, where plaintiff subsequently "seemingly dispute[d] the authenticity" of his exhibit).

Defendants seemingly call into question the authenticity and accuracy of the purported transcripts. Westchester County asserts that "[i]t is unclear who or what was the source of the reported conversations between Richard Griffin and plaintiff. The pages are not authored. They are not sworn to and it is not always clear who the dialogue is being attributed to." (Def. Westchester County's Mot. at 6 n.2.) Abbott House and Griffin "maintain that the purported 'transcripts' are inadmissible." (Defs. Abbott House's and Griffin's Mot. at 5 n.3.) In light of

these apparent questions regarding the authenticity and accuracy of the transcripts, the Court will not consider them in deciding the instant motions.

## II.     Sections 1983 and 1985

Plaintiff asserts two theories of liability under 42 U.S.C. §§ 1983 and 1985 arising out of Defendants' violation of her First Amendment rights: 1) "as a result of her truthful statements in court, [Defendants] conspired to have plaintiff terminated, and retaliated by threatening her with termination," (AC ¶ 48); and 2) "as a result of her truthful statements in court and her refusal to change her truthful statements in a subsequent hearing, [Defendants] conspired to have plaintiff terminated, and retaliated by terminating her."  (AC ¶ 52.)  These acts purportedly "chilled" Plaintiff's speech in violation of the First Amendment.  (AC ¶ 49.)  In other words, Plaintiff alleges claims of retaliation under § 1983 and conspiracy under §§ 1983 and 1985.

### A.     Section 1983 Claims Against Abbott House and Griffin

To prevail on any claim under § 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law." *Landon v. Cnty. of Orange*, No. 08 Cv. 8048 (CS) (LMS), 2009 WL 2191335, at *4 (S.D.N.Y. July 23, 2009); *see also Chambliss v. Rosini*, 808 F. Supp. 2d 658, 666 (S.D.N.Y. 2011).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).

The threshold issue before the Court is whether the challenged conduct constitutes state action.  Plaintiff asserts that her employer, Abbott House, is a government contractor, and Plaintiff and her supervisor Griffin are therefore a public employees.  (AC ¶ 14, Pl.'s Opp. at 12.)

5

Alternatively, Plaintiff argues that if Abbot House is deemed to be private actor, Defendants are still liable under § 1983 because Abbott House worked in conjunction with state actors. (Pl.'s Opp. at 12.) Abbott House and Griffin contend that Abbott House is not a state actor and that Plaintiff's actions cannot be fairly attributable to the state. (Defs. Abbott House's and Griffin's Mot. at 7.)

The Amended Complaint and Plaintiff's own arguments in opposition to the instant motions concede that Abbott House and its employees are private entities, and not state actors in their own right. (*See* AC ¶ 7 ("ABBOTT HOUSE is a domestic not-for-profit corporation"); Pl.'s Opp. at 12.). Plaintiff asserts, instead, that Abbott House and its employees are "contractors" with Westchester County, and as such, should be considered public employees for purposes of Plaintiff's § 1983 claims. (AC ¶¶ 7, 14; Pl.'s Opp. at 12.) Plaintiff relies solely on *Golodner v. Berliner*, 770 F.3d 196 (2d Cir. 2014) for this proposition, which explains that the Second Circuit "consider[s] government contractors, such as Golodner and [his employer], as equivalent to public employees for purposes of determining whether the speech at issue was protected." *Golodner*, 770 F.3d at 202 n.3. Here, unlike *Golodner*, the Court is not yet "determining whether the speech at issue was protected," but is instead determining the threshold issue of whether Abbott House and Griffin are state actors for purposes of bringing a § 1983 claim. *Golodner* is therefore unhelpful in making this determination.

There is no single test for determining whether the actions of a private entity or person such as Abbott House and Griffin have crossed into the realm of state action; rather, three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant

6

>in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant*, 691 F.3d at 207 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001); *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).  The fundamental question that underlies each of these tests is whether the challenged actions of the private actor are "fairly attributable" to the state.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Reviewing the Amended Complaint in the light most favorable to Plaintiff, there are simply no allegations sufficient to allege that Abbott House was being coerced or controlled by the state, or that it was acting jointly with the state.  In opposition to the instant motions, Plaintiff points only to paragraph 39 of the Amended Complaint as evidence that she adequately pled compulsion or joint action upon which to base her § 1983 claim.  Paragraph 39 states, in conclusory terms, that Plaintiff was fired because "Westchester County felt she was tainted." (AC ¶ 39.)  There is no explanation as to why Westchester County purportedly felt that Plaintiff was tainted, and even if Westchester County had made such a statement to Griffin, the Amended Complaint is devoid of any allegations that Westchester County encouraged, coerced, or compelled Griffin to terminate Plaintiff.  Plaintiff would have the Court search Exhibit A to the Amended Complaint – which the Court can only describe as a confusing and unauthenticated transcript of purported conversations spanning more than twenty pages – for such allegations, but as explained above the exhibit will not be considered in deciding the instant motions.

Plaintiff does not contend that Abbott House or Griffin are state actors under the public function test.  In any event, the Amended Complaint lacks any allegations to support the proposition that the care of minors in group homes is a function traditionally and exclusively

7

performed by the state.  *See Rendell-Baker*, 457 U.S. at 842 (requiring the "traditional and exclusive" showing).  Even if the Amended Complaint contained such allegations, case law suggests that these functions would not meet the requisite standard.  *See Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, 273 (E.D.N.Y. 2011) *aff'd sub nom. Phelan ex rel. Phelan v. Mullane*, 512 F. App'x 88 (2d Cir. 2013) ("*Sybalski* also makes clear that the proposition that private child-caring institutions may be state actors by virtue of their contractual relationship with the State is likewise no longer a valid basis for finding state action.") (citing *Sybalski*, 546 F.3d 255; *Lowe v. Astor Servs. for Children & Families*, No. 11 CV 0389 VB, 2011 WL 5142664, at *3 (S.D.N.Y. Sept. 29, 2011) *aff'd sub nom. Faddis-DeCerbo v. Astor Servs. for Children & Families*, 500 F. App'x 46 (2d Cir. 2012) (not-for-profit organization providing children's mental health services, welfare services, and early development programs found not to be "traditionally the exclusive prerogative of the state.")

Accordingly, Plaintiff's failure to demonstrate state action requires dismissal of her § 1983 claims.

### B.    Section 1983 Claims Against Westchester County

Plaintiff also asserts her § 1983 claims against Westchester County.  It has long been established that a municipality cannot be held vicariously liable under § 1983 unless the "execution of the government's policy or custom . . . inflicts the injury."  *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).  Thus, *Monell* dictates that any § 1983 claim against a municipal entity must be premised on the theory that the municipal actor's allegedly unconstitutional "acts were performed pursuant to a municipal policy or custom."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *see generally Monell*, 436 U.S. at 692-94.

Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [individual]." *Id*. (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> To satisfy the first requirement, a plaintiff must allege the existence of:
>
> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases). A plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim, and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, but in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.

1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 125 (1988) (plurality opinion) (explaining that only municipal officials with "final policymaking authority" concerning particular activities giving rise to plaintiff's claims "may by their actions subject the government to § 1983 liability") (internal citation omitted). "In the end, therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes*, 853 F. Supp. 2d at 439 (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)) (internal quotation marks omitted).

In the context of a motion to dismiss, "a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe,* 351 F. App'x 543, 545 (2d Cir. 2009). *See also Twombly*, 550 U.S. at 555.

Plaintiff's only allegation related to a policy of Westchester County is contained in paragraph 35 of the Amended Complaint. Plaintiff alleges that "[o]n or about June 3, 2013 Annette, an employee of Abbott House agreed and informed plaintiff that since Westchester County was funding the kids, she had to say what they wanted. She stated that this was a policy of Westchester County." (AC ¶ 35.) Not only is Plaintiff's allegation conclusory, but it is based on the statement of an employee of Abbott House, not a municipal official at the policy-making level. Further, Plaintiff, at best, describes only a single instance of conduct consistent with the purported policy. The combination of these deficiencies is fatal to Plaintiff's *Monell* claim and requires its dismissal. *See DeCarlo*, 141 F.3d at 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.")

*C.     Section 1985 Claims*

Plaintiff's § 1985 claims arise out of a purported conspiracy to terminate her "as a result of her truthful statements in court" and "her refusal to change her truthful statements in a subsequent hearing." (AC ¶¶ 48, 52.) It is unclear whether Plaintiff's claims arise under subsections two or three of § 1985, but in any event, Plaintiff's claims fail under either subsection.

In order to sustain a cause of action under § 1985(2), a plaintiff must allege "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely in a matter pending therein, which (3) causes injury to the claimant." *Herrera v. Scully*, 815 F. Supp. 713, 726 (S.D.N.Y. 1993) (citing 42 U.S.C. § 1985(2)). "[T]he statute applies only to conspiracies to prevent witnesses from appearing in *federal* courts." *Id.* (citing *Redcross v. Rensselaer Cty.*, 511 F. Supp. 364, 374 (N.D.N.Y. 1981)) (emphasis in original). Here, Plaintiff fails to allege that she appeared or testified in a federal court. Plaintiff's testimony occurred in a "permanency hearing," which is held in New York State family court. (AC ¶ 36); *see also* 22 CRR-NY 205.17 (permanency hearings conducted pursuant to Article 10-A of the Family Court Act). Plaintiff's § 1985(2) claim is therefore dismissed.

Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To adequately plead a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States."

11

*Hollman v. Cnty. of Suffolk*, No. 06-CV-3589 (JFB) (ARL), 2011 WL 280927, at *11 (E.D.N.Y. Jan. 27, 2011) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (internal quotation marks omitted)); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988)). A § 1985(3) claim also requires some "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Amended Complaint is devoid of any allegations demonstrating racial, class-based, or other "invidiously discriminatory animus" that might support a claim under § 1985(3). *Griffin,* 403 U.S. at 102. Plaintiff asserts in opposition to the instant motions that "[t]erminating one for engaging in protected speech—testimony before a court of law—is invidious as it is unjust and unfairly discriminating." (Pl.'s Opp. at 15.) Even this contention, a circular attempt to pay lip service to the pleading requirements of a § 1985(3) claim, fails to allege any instances of racial or class-based discrimination. All claims under § 1985(3) therefore fail.

## III.  Federal and State False Claims Acts

### A.  Plaintiff's Claims

According to the Amended Complaint, Plaintiff asserts claims under the Federal and New York State False Claims Acts (collectively, the "FCA" claims) arising out of a "lawsuit alleging fraudulent acts perpetrated by the Defendant." (AC ¶¶ 55, 59.) Plaintiff concedes in her opposition to the instant motions that these allegations were the result of a "copy and paste[]" error "from an old complaint and [Plaintiff] failed to remove references to [the] 'prior lawsuit.'" (Pl.'s Opp. at 17.) Instead, Plaintiff's FCA claims are based on allegations that Abbott House and Griffin:

>collected monies from the state to house residents, but rather sent employees home after sending the resident[sic] home for extended periods of time. This saved the agency money as it did not pay any employees on the days they[sic] resident was not in the home, but it nevertheless collected money from State and upon information and believe[sic] the federal government. A[bbott] H[ouse] did not inform the government that there was no resident at the home and they being[sic] paid for services that was[sic] not rendered.

(Pl.'s Opp. at 17.)

Although it is not clear from the Amended Complaint under which provisions of the Federal and State FCAs Plaintiff brings her claims, Plaintiff's requested relief tracks the statutory relief outlined in Federal and State FCA "whistleblower" retaliation claims. *Compare* AC ¶¶ 56, 60 (seeking "an injunction to restrain continued discrimination, reinstatement to the position Plaintiff held but for this discrimination or an equivalent position, . . . payment of two times back pay, plus interest and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees") *with* 31 U.S.C. § 3730(h)(2) ("Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.") *and* N.Y. State Fin. Law § 191 ("Such relief shall include but not be limited to: (a) an injunction to restrain continued discrimination; (b) hiring, contracting or reinstatement to the position such person would have had but for the discrimination or to an equivalent position; (c) reinstatement of full fringe benefits and seniority rights; (d) payment of two times back pay, plus interest; and (e) compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.").

To state a FCA retaliation claim under Federal or New York state law,[1] a plaintiff must show that: "(1) the employee engaged in conduct protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *Garcia v. Aspira of New York, Inc.*, No. 07 CIV. 5600 PKC, 2011 WL 1458155, at *3 (S.D.N.Y. Apr. 13, 2011) (quoting *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007) (internal quotation marks omitted)). Protected conduct is defined as "an employee's actions . . . 'in furtherance of an action under the FCA,' that is, an employee 'must have been investigating matters that were calculated, or reasonably could have lead [sic], to a viable FCA action.'" *Id.* at *4 (quoting *Faldetta v. Lockheed Martin Corp.*, 98 Civ. 2614(RCC), 2000 WL 1682759, *12 (S.D.N.Y. Nov. 9, 2000)). Simply put, "[t]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Moor-Jankowski v. Bd. of Trustees of New York Univ.*, No. 96 CIV. 5997 (JFK), 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998) (internal citations and quotation marks omitted).

The Amended Complaint lacks any allegations, well-pleaded or otherwise, concerning an investigation undertaken by Plaintiff directed at exposing fraud upon the government. Even Plaintiff's purported permanency hearing testimony, which is decidedly at the heart of this action, related to whether a child housed at Abbott House was absent without leave ("AWOL"), (*see* AC ¶ 36), and had nothing to do with whether Abbott House was fraudulently collecting

---

[1] "New York's whistleblower retaliation statute 'is essentially identical in language and substance to its federal counterpart,' *Forkell v. Lott Assisted Living Corp.*, No. 10–cv–5765, 2012 WL 1901199, at *14 (S.D.N.Y. May 21, 2012), and 'courts interpret [the former] by closely tracking judicial interpretation of [the latter].' *Landfield v. Tamaeres Real Estate Holdings, Inc.*, No. 11–cv–105149, 2012 WL 3135052, at *6 (N.Y. Sup. Ct. July 23, 2012)." *Monsour v. New York State Office for People with Developmental Disabilities*, No. 1:13-CV-0336 TJM CFH, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014).

money from Westchester County without rendering services.  Without undertaking an investigation or engaging in any other FCA-protected conduct, Plaintiff cannot state a claim under either the Federal or New York State FCA.  Her claims are therefore dismissed.

> B. *Request For Attorneys' Fees and Expenses*

Defendants Abbott House and Griffin seek attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4) and N.Y. Fin. Law § 190(6)(d) for defending against Plaintiff's FCA claims.

"[A] district court may award a defendant reasonable attorneys' fees against a *qui tam* relator if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.  Any one of these three conditions is sufficient for an award of attorneys' fees." *Mikes v. Straus*, 274 F.3d 687, 704-05 (2d Cir. 2001); *see also* 31 U.S.C. § 3730(d)(4).  "A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law." *Id.* at 705.

There is no evidence in the record that Plaintiff's claims are clearly vexatious or brought primarily for purposes of harassment.  Although Plaintiff's claims come alarmingly close to the line of being completely frivolous, they do not cross it.  The Court therefore declines to grant Abbott House's and Griffin's request for attorneys' fees and expenses.  Nevertheless, the Court can only assume that, based on the clear deficiencies in the Amended Complaint highlighted above, Plaintiff's counsel failed to conduct reasonable due diligence with respect to whether Plaintiff could plausibly assert a claim under the Federal or State FCA.  The deficiencies in the Amended Complaint are only exacerbated by counsel's myriad typographical, grammatical, and self-described "copy and paste" errors, all of which lends further credence to the notion that counsel failed to dedicate the time and attention to this matter that the Court expects of members

15

of the bar of the Southern District of New York.  Plaintiff's counsel is hereby warned that such actions could result in sanctions and/or the award of attorneys' fees and expenses in the future.

### IV.     Tortious Interference with Contractual Relations

Plaintiff's fifth cause of action alleges tortious interference by Westchester County with Plaintiff's contractual relations with Abbott House.  (AC ¶¶ 62-63.)  Although Plaintiff asserts in her opposition to the instant motions that the Court should "liberally read the complaint to state a claim for interference with business relations," (Pl.'s Opp. at 18), the Amended Complaint specifically "asserts a claim for tortious interference with contractual relations," (AC ¶ 63), and it is well-settled that a plaintiff may not amend a complaint through briefs filed in opposition to a motion to dismiss.  *See Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, No. 01 CIV. 5518 (MBM), 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003) ("A claim for relief may not be amended by the briefs in opposition to a motion to dismiss.") (internal citations and quotation marks omitted).  The Court therefore considers Plaintiff's fifth cause of action as one for tortious interference with contractual relations.

To establish a claim for tortious interference with contractual relations, a plaintiff must allege "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996) (internal citations omitted). Construed liberally, at best the Amended Complaint alleges the existence of an at-will employment contract between Plaintiff and Abbott House.  However, "a contract terminable at will cannot be the basis for a tortious interference with contract claim." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (collecting cases). "The reason for this principle is intuitive: there can be no breach of

contract, a necessary element for tortious interference with contract, when the contract may be terminated at will." *Id.* Because Plaintiff cannot demonstrate a necessary element of her claim, it is dismissed.

## V. New York State Executive Law

Plaintiff's sixth cause of action alleges retaliation under the New York State Executive Law. The Court construes this allegation as one for retaliation under New York State Executive Law § 290 *et seq.*, otherwise known as the New York State Human Rights Law ("NYSHRL"). To establish a *prima facie* case of retaliation under the NYSHRL, a plaintiff must show: "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal citation and quotation marks omitted); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004).

In order to sustain a NYSHRL retaliation claim, a plaintiff must allege participation in a "protected activity" – an "action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Here, Plaintiff states in conclusory terms that "she complained about a protected activity." (AC ¶ 65.) Plaintiff elaborates on this alleged "protected activity" in her opposition to the instant motions, describing it as "her protected speech" and explaining that "[t]estimony in court is the quintessential protected speech." (Pl.'s Opp. at 19.) Conspicuously missing from Plaintiff's Amended Complaint and her opposition papers is any reference to some sort of statutorily prohibited discrimination. Instead, the testimony that forms the basis of her purportedly protected activity relates to whether a child

housed at Abbott House was AWOL. (AC ¶ 36.) Without alleging that she protested or opposed statutorily prohibited discrimination, Plaintiff's NYSHRL retaliation claim must fail.

## VI. New York State Labor Law

Plaintiff's final cause of action alleges retaliation based on Plaintiff's "complaints against a protected activity" in violation of New York Labor Law § 215. (AC ¶ 67.) In order to state a § 215 claim, "a plaintiff must allege that (1) while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and (2) he or she was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Castagna v. Luceno*, No. 09-CV-9332 CS, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011) *aff'd*, 744 F.3d 254 (2d Cir. 2014) and *aff'd*, 558 F. App'x 19 (2d Cir. 2014) (quoting *Higueros v. N.Y. State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007)) (internal quotation marks omitted). Further, "[a] plaintiff must show that she 'complained about a specific violation of the Labor Law.'" *Id.* (quoting *Epifani v. Johnson*, 65 A.D.3d 224, 236 (2d Dep't 2009)). "An informal complaint to an employer that the employer is violating a provision of the Labor Law suffices." *Id.* (quoting *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08–6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan.30, 2009)).

Plaintiff asserts in her opposition papers that she "alleged in the Amended Complaint that she complained to her manager Richard Griffin about being compelled to testify falsely" in violation of New York Labor Law. (Pl.'s Opp. at 20.) The Court has searched the Amended Complaint, yet it cannot find any allegations related to a complaint made by Plaintiff to Griffin regarding her being compelled to testify falsely, let alone a complaint about a specific violation of New York Labor Law. Plaintiff's failure to plead that she complained about a specific violation of New York Labor Law requires dismissal of her claim.

## VII.   Plaintiff's Cross Motion to Amend

Plaintiff seeks to amend the Amended Complaint to add two new defendants, "Marisol Doe" and "Neil Doe." (Pl.'s Opp. at 22-23; Pl.'s Reply at 1.)  This amendment is requested to "add parties necessary to the action," but "not to add more claims." (Pl.'s Reply at 1.)

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court.  Fed. R. Civ. P. 15(a)(1)-(2).  When a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, the Court may deny leave to amend for "[r]easons [of] . . . undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'")).

Leave to amend may be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001)); *accord Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182).  A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted).  Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face."  *Riverhead Park Corp. v. Cardinale,* 881 F.

Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (denying motion to add claims as futile)).

All of Plaintiff's claims asserted in the Amended Complaint have been dismissed. As none of the Court's rulings were based on Plaintiff's claims being asserted against the wrong party, merely adding additional parties to this action would have no effect on the Court's rulings, making any amendment futile. Plaintiff's request for leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiff's cross-motion to amend is DENIED. The Court respectfully directs the Clerk of the Court to terminate the motions at ECF Nos. 23 and 30 and to close the case.

Dated: February 22, 2016
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge